(Surrogate's Court, New York County. February, 1900.)

WILLS—PROBATE—PROOF OF DEATH.

> The hotel where testatrix stayed was completely destroyed by a fire, which was first seen at 3 o'clock in the afternoon, and in 40 minutes the walls began to fall. No one on the sixth floor, where testatrix roomed, was known to have escaped, and the remains of the victims were incapable of identification. Testatrix called at the room of a friend on the sixth floor less than an hour before the fire. From the date of the fire (now more than a year ago), she has never been seen or heard from, no checks have been drawn on her account at the trust company or the bank, and her agent, who collected her rents and rendered monthly accounts, has never heard from her. *Held*, that such facts were sufficient proof of the death of the testatrix, and her will was admitted to probate.

Petition for the probate of the will of Annie Taylor Morgan, deceased. Probate decreed.

James S. Graves, for petitioner.

James A. Hudson, for trustee.

Manley & Wadley (Thos. C. T. Crain, of counsel), for contestant.

THOMAS, S. The evidence of the death of the testatrix by being burned in the fire which consumed the Windsor Hotel on March 17, 1899, though circumstantial, is entirely sufficient. She parted from her hairdresser at about 20 minutes past 1 o'clock in the afternoon, and declared that she then intended to return to the hotel, and later to go to the opera. She was subsequently seen in house attire on the ground floor of the hotel by two of the clerks, and by a guest, and then procured cash for a check of $10, which she drew on her account in the Farmers' Loan & Trust Company, and went towards the elevator leading to her room on the sixth floor. She was seen when leaving the dining room on the second floor, at about a quarter after 2, and then went to the elevator and rang the bell. She called at the room of a friend on the sixth floor within less than an hour before the beginning of the fire. The fire became known at about 3 o'clock, and raged most furiously in the upper floors, in the vicinity of her rooms. In 40 minutes after the first warning the walls of the building began to fall, and proceeded to the utter destruction of everything consumable in it. Not a single article of furniture was spared, and even the cast-iron work was nearly melted. No person who was known to have been on the sixth floor of the building at the time of the first alarm is shown to have escaped, and the remains of the victims were so completely consumed as to be incapable of identification. From the time of the fire until now (being nearly a year), no friend of the testatrix has seen her or heard from her, and no checks are shown to have been drawn on her account in the Farmers' Loan &

Trust Company; no demand has been made for payment of any part of the moneys to her credit with the banking firm of A. C. Morgan & Co.; her agent, who collected rents of her real estate, and who had been accustomed to render his accounts monthly, has not heard from her; and it has not been shown that she, or any one acting for her, has sought access to her securities in her safe-deposit vault in the Equitable Building. She had engaged an apartment in the Florence apartment house for a term beginning April 1st, and had shown an anxiety that it should be ready for her, but was not seen there after the fire. The evidence that Mr. Hill, now deceased, had stated to two of the witnesses that he had seen the testatrix leave the hotel shortly before the fire, and that he believed she was alive, was admitted with great hesitation, and its competency is more than doubtful. Having been admitted, however, it must be considered. It has all the vagueness of hearsay evidence, and falls far short of satisfying me that in all of the excitement of the awful occasion the facts were accurately observed, or that they were correctly remembered and recited, and have been testified to with accuracy. Mrs. Sherwood, who now relies upon the correctness of Mr. Hill's story, supposed at the time of the fire, and for some time afterwards, that she had seen Miss Morgan standing at a window surrounded with flames. This evidence is also greatly weakened by the statement of Mr. Hill to Mr. Leland, to the effect that he went down town early in the day, and returned while the fire was in progress. The theory of the counsel for the contestant that the testatrix may have left the hotel shortly before the fire, and then, having lost her memory by a nervous shock, wandered from her friends, to some unknown place or into some unknown lunatic asylum, does not impress me favorably. If she was in a place to be startled by the fire to a degree necessary to destroy her mind, she was certainly killed by it. The will was drawn by a lawyer who had previously transacted business for the testatrix, and who was a stranger to the beneficiary; and it was executed deliberately, and with all of the forms required by our statutes. There was absolutely no evidence of any influence having been used, whether proper or improper, in order to procure the will, and only one witness was willing to express an opinion that the testatrix was insane or of unsound mind. This one witness professed to have known Miss Morgan intimately, and to have taken great pleasure in her society. The evidence on this subject amounted to little, if anything, more than to establish that the deceased was a sensitive woman, who was at sometimes more inclined to social gossip than at others, and did not always make public the reasons for electing to cut short an intimacy. The testimony of the father of her sister's third husband as to the interview at which he sought to procure her to assume the burden of caring for a child of her sister by an earlier marriage falls far short of establishing an insane mind. The remarks then made by the witness as to the sister's sickness and its cause were quite sufficient to account for her acts on that occasion.

The paper propounded as a will must be admitted to probate. Present findings and decree for signature. Probate decreed.